United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Kathleen Smith, Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 20-20489-Civ-Scola |
| | ) |
| Lululemon USA, Inc., Defendant. | ) |

**Order Granting Defendant's Motion for Summary Judgment**

Plaintiff Kathleen Smith, a former Store Manager at Defendant lululemon and an occasional swimsuit model, brought this action against her former employer following her termination. (Compl., ECF No. 1.) Smith alleged that she had been discriminated against because of her gender and that she had been retaliated against for opposing lululemon's alleged discriminatory social media policy. (*Id.*) lululemon has moved for final summary judgment (ECF No. 32), to which Smith has responded (ECF No. 44) and lululemon has replied (ECF No. 51). Having considered the parties' briefing, the record, and the relevant legal authorities, lululemon's motion is **granted**. **(ECF No. 32.)**

1. **Background**

   *a. Smith violates the expense-reporting policy.*

   Smith worked at lululemon for approximately seven years, first as a "Key Leader" and then as a "Store Manager." (ECF 33 at ¶ 1.) Prior to 2018, Smith performed her job well, receiving no formal written warnings and several positive performance reviews. (ECF No. 43 at ¶¶ 28, 45; ECF No. 33 at ¶ 12.)

   However, in May 2018 Smith received a formal written warning (an "FFI"), in which Smith was warned of an increasing "trend" in "missing by-whens." (ECF No. 33-6; ECF No. 33 at ¶ 12; ECF No. 43 at ¶ 28.) The FFI broke down various missed deadlines, including Smith's failure to submit expense reports on time and her negligence in performing other administrative tasks as Store Manager. (ECF No. 33-6; ECF No. 33 at ¶ 13.) The May 2018 FFI warned that "[a]ny further trends in missing by-whens will result in further disciplinary action, up to and including termination." (ECF No. 33-6.)

   Lululemon's expense-reporting policy stated that employees must submit expense reports on a "timely basis," which Smith understood to be, for the most part, quarterly. (ECF No. 33 at ¶ 16; ECF No. 43 at ¶¶ 16, 18.) Smith was aware of how to timely and properly submit expense reports. (ECF No. 33 at ¶ 17; ECF No. 43 at ¶ 17.)

Despite the warning in the May 2018 FFI, Smith did not timely and properly submit all of her expense reports prior to her termination. (ECF No. 33 at ¶ 14; ECF No. 43 at ¶ 14.) As a result, Smith had reportedly accrued approximately $10,000 in unsubmitted expenses. (ECF No. 33 at ¶ 20; ECF No. 43 at ¶ 20.) In addition, because of her failure to properly submit expenses, Smith received a bonus to which she was not entitled. (ECF No. 33 at ¶ 22; ECF No. 43 at ¶ 22.) In August 2018, Smith received a "final reminder," warning that her company credit card would be deactivated unless she resolved her outstanding expenses. (ECF No. 43 at ¶ 49; ECF No. 43-11.) On September 21, 2018, Smith received another "final reminder," in which her manager was copied, again instructing her to resolve certain expenses. (ECF No. 33-8; ECF No. 33 at ¶ 14; ECF No. 43 at ¶ 14.) On September 28, 2018, lululemon terminated Smith. (ECF No. 33 at ¶ 24; ECF No. 43 at ¶ 24.) Smith received a letter stating that the termination was due to "Violation of Company Policy." (ECF No. 33-16.)

### b. *Smith's swimsuit photographs come under scrutiny.*

Smith's troubles with lululemon did not end with her expense-reporting compliance. Since approximately 2015, Smith publicly posted photographs of herself in swimwear via Instagram. (ECF No. 43 at ¶ 31; ECF No. 50 at ¶ 31.) In April 2018, Smith's manager, Ryan Fischbeck, told her that these photographs could be seen as unprofessional. (ECF No. 33 at ¶ 3; ECF No. 43 at ¶ 27; ECF No. 50 at ¶ 27.) Ms. Fischbeck again raised Smith's photographs in the summer of 2018, reiterating her concerns that the photographs were unprofessional. (ECF No. 43 at ¶ 29; ECF No. 50 at ¶ 29.) A third warning came in August 2018, when Ms. Fischbeck told Smith that she needed to "make a decision" about whether she was willing to follow lululemon's revised social media policy. (ECF No. 43 at ¶ 30; ECF No. 50 at ¶ 30.)

Lululemon's revised Standards of Professional Conduct were shared with Smith and other managers in July 2018. (ECF No. 43 at ¶ 36; ECF No. 50 at ¶ 36.) These standards included a section regarding the use of social media (the "Social Media Policy"), which, in part, asked employees to "consider" whether they were "[s]haring inappropriate pictures" on social media. (ECF No. 43-17; ECF No. 43 at ¶ 36; ECF No. 50 at ¶ 36.) Smith objected to the policy, raising concerns over its apparent subjectivity in determining what were "inappropriate" photographs. (ECF No. 43 at ¶ 39; ECF No. 50 at ¶ 39.) Smith and Ms. Fischbeck "clashed" over the new policy. (*Id.*)

Smith identified other employees that were caught in the frame of the new policy. One male manager, Mr. Shupert, was issued an FFI in August 2018, in part because of publicly available photographs of bikini-clad women

that he posted on his Instagram. (ECF No. 33 at ¶ 10; ECF No. 43 at ¶¶ 10, 32.) One female employee, Olympia Ridge, also posted publicly available photographs of herself in swimwear, although no detrimental action was taken against her. (ECF No. 43 at ¶ 35; ECF No. 50 at ¶ 35.) Last, Smith identified one male employee, Brandon Doyle, who posted public photographs of himself in swim briefs, and neither party identified any adverse action against Doyle. (ECF No. 43 at ¶ 40; ECF No. 50 at ¶ 40.)

### 2. Legal Standard

The Court applies the familiar legal standard for summary-judgment motions. "Summary judgment is appropriate where the pleadings, affidavits, depositions, admissions, and the like show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015) (cleaned up). "[T]o survive summary judgment, the nonmoving party must . . . make a showing sufficient to permit the jury to reasonably find on its behalf." *Id.* "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir.2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

### 3. Discussion

The Defendant moves for summary judgment on all three of the Plaintiff's claims—(1) Gender Discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the Florida Civil Rights Act, Fla. Stat. § 760.01 *et seq.* ("FCRA"); (2) retaliation under Title VII and the FCRA; and (3) retaliation under Fla. Stat. § 448.102(3) ("FWA"). The Court will address each in turn.

#### A. Gender Discrimination

Per the familiar *McDonnell Douglas* test, a plaintiff must establish a *prima facie* case of discrimination under Title VII by showing that: (1) the plaintiff is a member of a protected class; (2) the plaintiff was subjected to adverse employment action; (3) the plaintiff's employer treated similarly situated employees, who are not within the protected class, more favorably; and (4) the plaintiff was qualified for the job at issue. *See Rice-Lamar v. City of*

*Ft. Lauderdale, Fla.*, 232 F.3d 836, 842-43 (11th Cir. 2000) (referencing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If a plaintiff makes out a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory basis for the action at issue. *See Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1325 (11th Cir. 2011). Once such a basis is articulated, the burden falls back to the plaintiff to show that the employer's reason was pretext for unlawful discrimination. *See id.* at 1326.

But even if a plaintiff fails to satisfy the *McDonnell Douglas* test, a plaintiff may survive summary judgment by presenting a "convincing mosaic of circumstantial evidence" that permits a jury to infer intentional discrimination.[1] *See Henderson v. Lab. Corp. of Am. Holdings*, 851 F. App'x 972, 977 (11th Cir. 2021) (quoting *Sims v. MVM, Inc.*, 704 F.3d 1327, 1332 (11th Cir. 2013)).

Here, Smith abandons the *McDonnell Douglas* test and looks only to the "convincing mosaic" test. (ECF No. 44 at 14.) A "convincing mosaic" is shown by demonstrating: (1) suspicious timing or other "bits and pieces from which an inference of discriminatory intent might be drawn," (2) "systematically better treatment of similarly situated employees," and (3) evidence that the employer's justification is pretextual. *See Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1185 (11th Cir. 2019).

*First*, Smith fails to gather enough "bits and pieces" to permit an inference of discriminatory intent. To piece together her mosaic, Smith largely relies on a limited number of interactions with her manager, Ryan Fischbeck, which Smith argues demonstrates the targeting of women who publicly share photographs of themselves in swimwear online. (ECF No. 44 at 15–16.) Smith points to three instances, dating from April 2018 to August 2018, where Ms. Fischbeck commented on Smith's swimsuit photographs, deeming such photographs unprofessional. (ECF No. 43 at ¶¶ 27, 29–30; ECF No. 50 at ¶¶ 27, 29–30.) Smith also points to the promulgation of the revised Social Media Policy in July 2018, as well as the timing of her termination, which took place about forty-five days after a conversation where Ms. Fischbeck told Smith to "make a decision" about whether she could abide by the Social Media Policy. (ECF No. 43 at ¶ 30; ECF No. 50 at ¶ 30.) Taken together, these incidents do not point towards discriminatory intent; rather, these point towards a supervisor asking a store manager to comply with and enforce a neutrally applicable policy.

---

[1] A plaintiff can also present "direct evidence of discriminatory intent" in order to escape summary judgment. *See Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1220 n.6 (11th Cir. 2019). The Plaintiff has not shown any direct and explicit evidence of discriminatory intent.

*Second*, Smith does not show the "systematically better treatment" of similarly-situated employees. *See Lewis*, 934 F.3d at 1185. A similarly-situated employee is one outside of the plaintiff's classification that is "similarly situated in all material respects." *See Lewis*, 918 F.3d at 1227. Therefore, a similarly situated employee here would be a male store manager or other leader that publicly posts photographs of himself in swimwear. Smith points to only one male employee who posed in revealing swimwear and received no reprimand. (ECF No. 43 at ¶ 40.) But Smith does not establish whether this individual was similarly situated—while Smith was a Store Manager, there is no evidence regarding Mr. Doyle's job title or position. *See Bird v. Univ. of Fla. Bd. of Trustees*, No. 18-cv-221-AW-GRJ, 2020 WL 9550223, at *7 & n.14 (N.D. Fla. Sept, 1, 2020) (holding that the plaintiff had failed to show the "systemically better treatment of any similarly situated employee" as the plaintiff had not shown that other better-treated employees held the same position). The only store manager that Smith references is Mr. Shupert, who also received an FFI and was asked not to publicly share photographs of women in bikinis.[2] (ECF No. 43 at ¶ 32.) The failure to show the systemically better treatment of male store managers who publicly post photographs of themselves in swimwear is fatal.

*Last*, Smith cannot show that lululemon's reason for her termination—her breach of the expense-reporting policy—was pretextual. When evaluating pretext, courts look to whether the employer's decisionmakers believed that the employee committed misconduct and whether that belief was the reason for termination. *See Ceus v. City of Tampa*, 803 F. App'x 235, 250 (11th Cir. 2020) (citing *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991)). Smith attempts to cast doubt by complaining that her termination was only forty-five days after her manager told her to "make a decision" about whether she could follow the Social Media Policy. ((ECF No. 43 at ¶ 30.) Smith also contends that she communicated difficulties in submitting her expense reports and attempted to resolve these issues with lululemon. (ECF No. 43 at ¶¶ 47–48; ECF No. 50 at ¶¶ 47–48.)

These do not rebut lululemon's legitimate, non-discriminatory basis for termination. Ms. Fischbeck believed that Smith had violated the expense-reporting policy; she raised the issue in May 2018 in an FFI with Smith and warned that continued violations could lead to termination. (ECF No. 33 at ¶ 12; ECF No. 33-6.) Smith continued to violate the expense-reporting policy, including in the days before her termination. (ECF No. 43 at ¶ 15; ECF No. 33

---

[2] Following the FFI, Mr. Shupert removed photographs of women in swimwear from his Instagram, and he remains employed with lululemon. (ECF No. 43 at ¶ 34.)

at ¶ 15.) On September 21, 2018, Smith was given a "final reminder" to correct deficiencies in her expenses, which were reported as nearing $10,000, and Ms. Fischbeck was copied on the e-mail. (ECF No. 33 at ¶¶ 15, 20; ECF No. 33-8; ECF No 43 at ¶¶ 15, 20.) Smith was terminated one week later—the stated reason being her continued violation of the expense-reporting policy. (ECF No. 33 at ¶ 24; ECF No 43 at ¶ 24; ECF No. 43-5 at 151:18–152:21.)[3]

Absent a triable issue of fact regarding whether the alleged pretext was false, Smith cannot succeed. This is because courts are not empowered to act as "a super-personnel department" over the non-discriminatory workings of the workplace. *See Elrod*, 939 F.2d at 1470; *see also Flowers v. Troup Cnty., Ga., School Dist.*, 803 F.3d 1327, 1338 (11th Cir. 2015) ("Title VII does not allow federal courts to second-guess nondiscriminatory business judgments, nor does it replace employers' notions about fair dealing in the workplace with that of judges."). Indeed, for purposes of Title VII, employers may fire employees for "a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Flowers*, 803 F.3d at 1338 (quoting *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984)).

Smith may not like lululemon's reason for her termination, but she acknowledges that she violated the expense-reporting policy. (ECF No. 33 at ¶ 14; ECF No. 43 at ¶ 14.) And Smith has not captured a "convincing mosaic," as she has failed to show the better treatment of any, let alone the systematically better treatment, of similarly situated employees, and she has failed to rebut lululemon's legitimate, non-discriminatory basis for her termination.[4] Therefore, Smith cannot succeed on a claim of gender discrimination.

### B. Retaliation under Title VII and the FCRA

Under Title VII and the FCRA, a plaintiff must show a *prima facie* case that (1) the plaintiff engaged in a "statutorily protected expression," (2) the plaintiff suffered a "materially adverse action," and (3) there was a "causal link"

---

[3] Nor can Smith demonstrate pretext as she cannot show that lululemon's basis for termination was false. *See Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) ("[A] reason is not pretext for discrimination unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.") (emphasis in original). Smith cannot argue that the reason was false; it is undisputed that Smith violated the expense-reporting policy and was admonished in writing for doing so. (ECF No. 33 at ¶ 14; ECF No. 43 at ¶ 14.)

[4] This result would be the same even if Smith argued the *McDonnell Douglas* framework, as Smith did not show that she was subjected to disparate treatment compared to similarly situated employees, nor did she rebut lululemon's articulated, non-discriminatory justification and show that it was pretextual, for the reasons described above.

between the adverse action and the protected activity. *See Lewis v. Blue Bird Corp.*, 835 F. App'x 526, 529 (11th Cir. 2020). Once a *prima facie* case is made, the burden-shifting framework of *McDonnell Douglas* is applied. *See id.*

 *First*, Smith did not engage in statutorily protected expression. Under Title VII, the act of "opposing any practice made an unlawful employment practice by Title VII" (such as discrimination) constitutes engaging in "statutorily protected expression." *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1187 (11th Cir. 2001) (cleaned up). A plaintiff need not show that the practice was unlawful; rather, it is enough for the plaintiff to show a "good faith, reasonable belief" that the plaintiff was the victim of an unlawful practice and that such belief led the plaintiff to report the conduct at issue. *See id.* This standard entails both a subjective and an objective component—the plaintiff must show that the belief (1) was subjectively held in good faith and (2) was objectively reasonable. *Id.* (citing *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)).

 The parties agree that Smith voiced an objection to the Social Media Policy's subjectivity, *i.e.*, that the policy *could* be used in a discriminatory fashion. (ECF No. 43 at ¶ 39; ECF No. 50 at ¶ 39.) Nonetheless, Smith has not shown that such belief was reasonable. Many employer policies have the potential to be used in a discriminatory fashion—indeed, as Smith raised with Ms. Fischbeck, the Social Media Policy could, in theory, be used to discriminate against a number of protected groups. (ECF No. 43 at ¶ 38.) But what matters is whether the belief that an employer used a policy to discriminate was "*objectively* reasonable in light of the facts and record presented." *Lipphardt*, 267 F.3d at 1187 (emphasis added). In support, Smith relies on the following incidents: (1) Ms. Fischbeck raised concerns regarding Smith's swimsuit photographs on three occasions; (2) Ms. Fischbeck spoke with Mr. Schupert about pictures of bikini-clad women that he posted on his publicly available social media; (3) Ms. Fischbeck inquired into reprimanding another female employee, Ms. Ridge, because of her public swimsuit photographs, although no adverse action was taken; and (4) a male employee, Mr. Doyle, who makes public certain photographs of himself in swim briefs, is still employed by lululemon. (ECF No. 43 at ¶¶ 27, 29, 30, 32–33, 35, 40.) The record demonstrates that some (Smith) but not all (Ridge) female employees were spoken to regarding the pictures that they shared online, and some (Shupert) but not all (Doyle) male employees were reprimanded for the photographs that they shared online. Given such differing treatment among gender classifications, it is not objectively reasonable to conclude that the Social Media Policy was used in a discriminatory fashion. Therefore, Smith did not engage in statutorily protected expression.

*Second*, even if Smith met her burden to show a *prima facie* case, Smith is unable to rebut lululemon's legitimate, non-retaliatory reason and show that it was pretextual, for the reasons discussed above. *See supra* Section 3.A. Therefore, Smith's claim of retaliation under Title VII and the FCRA fails.

### C. Retaliation under the FWA

Under the FWA, a plaintiff must show that (1) the plaintiff engaged in a "statutorily protected expression," (2) the plaintiff suffered a "materially adverse action," and (3) there was "some causal relation" between the adverse action and the protected activity. *See Rivera v. Spirit Airlines, Inc.*, No. 19-62298-Civ-Scola, 2020 WL 491454, at *2 (S.D. Fla. Jan. 30, 2020) (Scola. J.). This standard is the same as the Title VII standard applied above, *see Rutledge v. SunTrust Bank*, 262 F. App'x 956, 957–58 (11th Cir. 2008), and therefore the result is the same.

### 4. Conclusion

In total, the Court finds that summary judgment is appropriately entered for the Defendant. A review of the relevant legal authorities and record evidence demonstrate that the Plaintiff has failed to meet the *prima facie* cases for general discrimination and retaliation, and even if the Court assumed that she did, she failed to rebut lululemon's legitimate, non-discriminatory reason for the Plaintiff's termination. Therefore, the Court **grants** the Defendant's motion for summary judgment (**ECF No. 32**).

The Court directs the Clerk to **close** this case. All pending motions, if any, are **denied as moot**.

**Done and ordered** at Miami, Florida on September 1, 2021.

_____
Robert N. Scola, Jr.
United States District Judge